BARNES *v.* STATE.

(In Banc. Oct. 8, 1945.)

(23 So. (2d) 405. No. 35931.

Edwards & Edwards, of Mendenhall, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The appellant, John T. Barnes, seeks a reversal of his conviction of the murder of Sidney Burns, and mainly upon two grounds: (1) The alleged failure of the prosecution to prove the corpus delicti aliunde the confessions of the accused, on account of which it is contended that he was entitled to a direted verdict of acquittal; and, (2) that it was error to admit the confessions over the objection of the accused since they were not freely and voluntarily made, and that therefore he is at least entitled to a new trial.

A decision of the first question above stated is not without some difficulty, but the position of the appellant in regard to the inadmissibility of the confessions made to the officers while he was in their custody and under the circumstances disclosed by the record is clearly well taken.

The proof of the alleged crime aliunde the confessions was that on the morning of October 17, 1944, the wife of the accused, Allie Barnes, and his son-in-law, the said Sidney Burns, became violently ill and nauseated almost immediately after eating a breakfast prepared by Mrs. Myrtis Burns, the wife of Sidney Burns and daughter of the said Allie Barnes and the accused, John T. Barnes. That both Mrs. Barnes and Sidney Burns died during that day, allegedly from arsenic poisoning, and Mrs. Myrtis Burns, who was late at breakfast and whose meal was suddenly interrupted by the illness of her mother, was also caused to become ill and to be carried to the hospital for treatment, which she claims was likewise due to poison from having eaten a small portion of a biscuit for breakfast. That the accused was the only one of the four members of the family household who did not eat biscuit that morning, but his failure to do so on that occasion and for some time prior thereto is explained by his state of ill health and was in compliance with the advice of his physician. That the biscuits were made by Mrs. Burns from flour contained in a 24 pound sack which had been purchased by her husband, and all of which except ''about a gallon'' had been theretofore used and found to be wholesome. That after the accused had made a fire in the stove on the morning in question, Mrs. Burns emptied the remaining contents of this sack of flour into the flour barrel and then dipped out the amount needed for the breakfast. And if any analysis was ever made of the remaining contents of the barrel, or of anything that had been eaten by either Mrs. Barnes or Sidney Burns, such fact was not disclosed by the testimony, the physi-

cian being merely asked to state his opinion as to what caused their deaths.

But it was further shown that when the sheriff appeared upon the scene that day to make an investigation the accused stated that the screen door to the kitchen was fastened at about 11 o'clock the night before and was open when he went to the kitchen the next morning to make the fire; that he also stated to a neighbor that the poison was not in the flour (evidently meaning at the time it was purchased) but that it had come through that door the night before; and that, according to the testimony of the sheriff, there was no sign on the door to indicate that it had been broken open and it had been fastened with the screen door hook or latch from the inside.

If it were true, as suggested by the accused, that some unknown person had unfastened the kitchen door from the outside after 11 o'clock of the night before, such fact would tend to support the theory of the state that some person, at least, if not the defendant, had put poison in one of the ingredients used for preparing the morning meal, provided it is further true, as testified to by the physician, that the deaths were caused from arsenic poisoning under circumstances such as to warrant a jury in finding that they were caused by eating poisoned biscuit for breakfast. On the other hand, if the statement of this alleged fact by the accused in regard to the door having been opened from the outside in the night time is rejected, then the fact that he volunteered to make such a statement without justification may be considered as a circumstance indicating a purpose to thus divert suspicion from the surviving members of the family household, including himself.

There were additional circumstances testified to, but of slight probative value, tending to establish the corpus delicti aliunde the confession, even though no motive on the part of any person to commit the crime was shown by any testimony of a substantial nature. And we deem

it sufficient to say, without further discussion of the facts on this issue, that in our opinion the evidence is enough to sustain the refusal of the trial court to grant the requested peremptory instruction.

The principal reason underlying the rule that the corpus delicti must be shown by proof aliunde the confession of an accused is to prevent the conviction of a person upon his confession of what may later prove to be merely an imaginary crime. But where, for instance, either the death of a person, the burning of a house or the disappearance of property has been clearly established, then the fact that such result was produced by a criminal agency may be shown by circumstantial evidence. Such fact is not required to be shown beyond a reasonable doubt by other evidence where the accused has made a free and voluntary confession, but such a confession may be invoked in aid of the other proof to establish the corpus delicti beyond a reasonable doubt. Walker v. State, 127 Miss. 246, 89 So. 921; Patterson v. State, 127 Miss. 256, 90 So. 2; Garner v. State, 132 Miss. 815, 96 So. 743; Nichols v. State, 165 Miss. 114, 145 So. 903; Whittaker v. State, 169 Miss. 517, 142 So. 474; Keeton v. State, 175 Miss. 631, 167 So. 68; Anderson v. State, 184 Miss. 892, 186 So. 836; Gross v. State, 191 Miss. 383, 2 So. (2d) 818; and Phillips v. State, 196 Miss. 194, 16 So. (2d) 630. And in the instant case, aside from the confessions made to the officers, on March 28th and 29th, 1945, respectively, the accused is alleged to have previously made a free and voluntary statement on March 12th to a minister of the gospel to the effect that he had killed his wife, Allie Barnes, which, if true, would be relevant and competent on the question of his guilt of the charge of having also murdered his son-in-law Sidney Burns, since their deaths were produced by the same act.

The first of the two confessions made to the officers was not made until more than five months after the homicide, and then only after much persuasion every night over a period of five days. It was made pursuant to statements

and promises made to the accused by a detective and the sheriff to the effect that if he would confess the alleged crime his daughter, the said Mrs. Myrtis Burns, and his son Mack Barnes would be released from the Hinds County jail, which was accordingly done forthwith; that it would be better for him and the law would be lighter on him if he would confess; that the sheriff would take him from this jail, carry him home, and sign his bond if the court should allow a bond; and that the sheriff would do what he could for him—a hoped for aid which is so substantial as not to be lightly rejected as of no consequence by one accused of a capital felony in a sheriff's home county. Moreover, the detective, who was paid $50 for obtaining the confession, and who admittedly, and without authority from the accused in that regard, wrote it at first so as to disclose a motive for the alleged crime which was otherwise lacking, and who then submitted it to the accused for signature before the latter struck it out as untrue, says that in addition to the foregoing inducements offered the accused for making the confession they told him in substance that although he could get the electric chair he might get off for as little as two years for manslaugter if he confessed to poisoning his wife and his son-in-law.

It has long been settled by an unbroken line of decisions in this and other states that a confession of crime made under the circumstances hereinbefore related is not free and voluntary. We cite only a few of them from our own court in point: State v. Smith, 72 Miss. 420, 18 So. 482; Harvey v. State, Miss., 20 So. 837; Mitchell v. State, Miss., 24 So. 312; McMaster v. State, 82 Miss. 459, 34 So. 156; Clash v. State, 146 Miss. 811, 112 So. 370; and McDowell v. State, 189 Miss. 617, 198 So. 564.

It is also well established by the previous decisions of this Court that the influences and inducements which render a previous confession inadmissible in evidence as not being free and voluntary are presumed to continue in operation at the time of a subsequent one made shortly

thereafter, unless such influences are clearly shown to have been removed or the promises and inducements have been withdrawn. Some of the cases so holding are those of McMaster v. State, 82 Miss. 459, 34 So. 156; Banks v. State, 93 Miss. 700, 47 So. 437; and Boudreaux v. State, 175 Miss. 625, 168 So. 621. And this is especially true where the accused is confronted at the time of making the subsequent statements by some of the same persons who heard the original confessions and induced the same.

In the instant case the second signed statement was submitted to the accused after he was asked if he would then repeat the confession that he had made on the day before to some of the persons then present. It is a mere repetition and confirmation of the former one. And it appears that when the accused read the statement, which had been prepared in advance of the conference in regard thereto, he put it aside in a vacant chair near him, and when asked the second time whether he woud sign it he finally replied, ''I might as well.'' Although he was then warned for the first time that anything that he said would be used against him and the writing itself recited that no promises had been made, it does not appear that this subsequent repetition of the original confession was not induced to some extent at least, if not entirely, by the fact that he had made the one on the day before under the circumstances heretofore stated.

We are, therefore, of the opinion that both of these confessions should have been excluded; that the case must be reversed and remanded for a new trial because of their admission in evidence over the objection of the appellant.

But no error was committed in receiving the testimony of the Rev. Robert Thompson to the effect that on March 12, 1945, the accused voluntarily stated to him out of the hearing of anyone else that he wanted the minister to pray for him, saying that he was in trouble, and that he had ''killed Allie.'' This statement is relevant and competent on the issue of whether or not he poisoned Sidney

Burns, since he and Mrs. Allie Barnes died as the result of the same act.

Nor was it error to exclude the testimony offered by the accused to show that complaints had been made by neighbors in regard to other flour made by a different manufacturer containing a foreign and deleterious substance.

It was error, however, to permit the detective to testify that the sheriff brought to him a different report from up near Kosciusko than had been given him about certain matters by the accused; and also to permit the sheriff to testify that "the druggist showed me a cardboard box that they put poison in (meaning that the druggist said that he put poison in the kind of a box that he showed the officer) that was just like the description of the box that Mr. Barnes described to me that he got the poison in." The druggist did not testify and there is no proof as to what kind of a box "they put poison in" to sell to customers except this hearsay evidence; nor is there any proof, aside from the two confessions to the officers, that the accused was ever in the drug store for any purpose within several months prior to the time of the poisoning.

For the reasons hereinbefore stated, the cause is reversed for a new trial.

Reversed and remanded.