722 So.2d 1267 (1998)
Bennie HARPER, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00249 COA.
Court of Appeals of Mississippi.
October 13, 1998.
*1268 P. Shawn Harris, Attorney for Appellant.
Office of the Attorney General By Charles W. Maris, Jr., Jackson, Attorney for Appellee.
Before BRIDGES, C.J., COLEMAN AND HERRING, JJ.
HERRING, J., for the Court:
¶ 1. Bennie Harper appeals to this Court from his conviction in the Circuit Court of Scott County, Mississippi, of possession of more than one kilogram of marijuana with intent to sell. Harper challenges his conviction on the grounds that the trial court erred in denying a request to suppress (1) evidence and (2) a statement by Harper obtained by agents during and shortly after his arrest. We find that the statement was not freely and voluntarily given and therefore reverse and remand for a new trial.

A. THE FACTS
¶ 2. On July 12, 1996, several agents from the Mississippi Bureau of Narcotics met with a confidential informant and conducted a preliminary meeting relating to a proposed drug buy from a suspected dealer, Bennie Harper. After searching the informant and his vehicle, the agents installed a transmitter in the vehicle and instructed the informant to place a telephone call to Harper's pager from a local pay telephone. The informant called *1269 Harper's pager number, and shortly thereafter, he received a call back from Harper. Harper directed the informant to travel to the 35 Quick Stop near Forest, Mississippi. As the informant complied with Harper's instructions, the agents followed him to the parking lot of the Quick Stop where they overheard a conversation between the informant and an unidentified individual over the transmitter.
¶ 3. The informant then contacted the agents and notified them that Harper was traveling in their direction. The agents, who were pulled over onto the shoulder of the roadway, observed the suspect as he drove down the road and then stopped on the side. The informant followed the suspect in his vehicle to the location on the roadside where Harper had parked. At that point, the informant got out of his vehicle and walked toward Harper's vehicle. At the trial, Agent Jimmie Nichols testified that the informant appeared to enter Harper's vehicle and, after a few minutes, returned to his vehicle. Once inside his own vehicle, the informant notified the agents that Harper possessed the drugs, and they proceeded to arrest Harper. Although the record is not clear, it appears that the informant did not actually purchase any drugs from Harper. When the agents removed Harper from his vehicle, they noticed an open bag on the rear floorboard which contained what appeared to be several "bricks" of marijuana. After the agents removed the evidence from the vehicle, they traveled to another location to elude the detection of other suspected drug dealers in the area. Harper subsequently gave a statement to the agents in which he admitted his involvement in the transaction.
¶ 4. Following a trial in the Circuit Court of Scott County, a jury found Harper guilty of possession of more than one kilogram of marijuana with intent to sell. Harper was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections and ordered to pay a $10,000 fine.

B. THE ISSUES
¶ 5. Harper raises the following issues which are taken verbatim from his brief:
The Court erred by not granting the Appellants [sic] motion for directed verdict and her [sic] request for a peremptory instruction. The Court further erred in not sustaining the motion for a new trial as the Court erred in admitting the evidence which was the product of an illegal search. The Court further erred in admitting the confession of the Appellant, as it was the product of coercion and promises of leniency.
¶ 6. Although Harper, in his statement of issues, raises three assignments of error, he does not address and states no authority for his contention that the trial court erred in not granting his motion for a directed verdict or his request for a peremptory instruction. Thus, we will not address this matter on appeal. De La Beckwith v. State, 707 So.2d 547, 597 (Miss.1997); Holloman v. State, 656 So.2d 1134, 1140 (Miss.1995).

C. ANALYSIS

I. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE THE MARIJUANA WHICH THE NARCOTICS AGENTS RECOVERED FROM BENNIE HARPER'S VEHICLE?
¶ 7. Harper asserts that the trial court erred in failing to suppress the marijuana recovered from the rear floorboard of his vehicle. He contends that the agents had removed him from the vehicle and secured him. Thus, no exigent circumstances existed to justify a warrantless search of the vehicle. Harper also alleges that the recovered evidence was not within the agents's plain view because of its location and the fact that the vehicle had tinted windows. As a result, Harper claims that the unauthorized search violated his constitutional right to be free from unreasonable searches pursuant to the Constitution of the United States and the Mississippi Constitution of 1890.
¶ 8. The Fourth Amendment of the United States Constitution, as well as Article Three, Section Twenty-six of the Mississippi Constitution guarantee to every person the right to be free from unreasonable searches and seizures. Despite the constitutional preference for searches conducted pursuant to an authorized *1270 search warrant, both the United States Supreme Court and the Mississippi Supreme Court have recognized certain exceptions to the warrant requirement. See Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Graves v. State, 708 So.2d 858, 862-63 (Miss.1997). Some of the more established exceptions recognized by the Mississippi Supreme Court include "search incident to arrest, search of a vehicle, plain view, stop and frisk, hot pursuit and emergency search, administrative search...." Graves, 708 So.2d at 862-63 (footnotes omitted).
¶ 9. The Mississippi Supreme Court recently addressed a somewhat similar situation concerning the automobile exception to the warrant requirement. Jackson v. State, 689 So.2d 760, 764-66 (Miss.1997). In that case, a confidential informant notified law enforcement officers that three vehicles would be traveling in tandem through the Mississippi Gulf Coast on Interstate 10 and that the third vehicle would contain a package of drugs. Id. at 764. Although the officers admitted that they had sufficient time to request a search warrant, an investigating officer testified that he stopped the vehicles, conducted a search, and located the drugs without obtaining a warrant. Id. at 764-65.
¶ 10. On appeal, the supreme court found that the officers had sufficient probable cause to stop the vehicles and to search the suspects based on the information they received from the informant coupled with their personal observations which corroborated the informant's details. Id. at 765. The court noted that "police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle as thorough as a magistrate could authorize by warrant." Id. (quoting Fleming v. State, 502 So.2d 327, 329 (Miss.1987)). Moreover, the court recognized that "[t]he justification to conduct such a warrantless search does not vanish once the car has been immobilized." Id. (quoting Michigan v. Thomas, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982)). Because the officers had probable cause and the search involved an automobile, the court concluded that "it was permissible for the officers to search the car and its contents without a search warrant...." Id. at 765-66.
¶ 11. In the case sub judice, the agents had probable cause to stop and search Harper's vehicle. During a suppression hearing, Agent Jimmie Nichols testified that the confidential informant had purchased marijuana from Harper in an undercover operation a few weeks earlier in the same manner. Nichols described in detail the events leading up to the proposed drug transaction on the date in question. The officers followed the confidential informant and remained in contact with him through the radio transmitter placed in his vehicle. After the informant met with Harper, he returned to his vehicle and notified the agents that Harper had the drugs in his possession. Agent Nichols testified that they moved in, secured the informant, and removed Harper from his vehicle. Furthermore, Nichols stated that he observed a large bag in the rear floorboard of Harper's vehicle "containing what appeared to be five or six large bricks of marijuana" through a window in the vehicle. While Nichols acknowledged that the vehicle's windows were tinted, he testified that it was "broad daylight," and he was able to see inside of the vehicle without any problem or apparent obstruction. Consequently, we find that the trial court did not err in admitting into evidence the marijuana recovered from Harper's vehicle. Both the automobile and plain view exceptions permitted the agents to search the vehicle without first obtaining a warrant. See Franklin v. State, 587 So.2d 905, 907 (Miss.1991) ("Any information obtained by means of the eye where no trespass has been committed in aid thereof is not illegally obtained."). Accordingly, this assignment of error is without merit.

II. DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS HARPER'S STATEMENT?
¶ 12. Harper asserts that the trial court erred in failing to suppress a statement which he made to the narcotics agents following the drug transaction. He contends that the confession was not voluntarily given because *1271 Agent Nichols induced him to give the statement with promises of leniency. As a result of this alleged inducement, Harper argues that his statement to the agents was inadmissible at trial.
¶ 13. The determination of whether or not a confession was freely and voluntarily given is a finding of fact for the trial court. Layne v. State, 542 So.2d 237, 239 (Miss. 1989). The trial court must resolve "whether the accused has been adequately warned, and whether, under the totality of the circumstances, he has voluntarily and intelligently waived his privilege against self-incrimination." Id. The State has the burden of proving all facts relevant to the admissibility of the confession beyond a reasonable doubt. Blue v. State, 674 So.2d 1184, 1204 (Miss. 1996). We will not reverse the decision of the trial court in this regard unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence. Hunt v. State, 687 So.2d 1154, 1160 (Miss.1996). Furthermore, where the evidence presented is contradictory, we must generally affirm the trial court's decision. Morgan v. State, 681 So.2d 82, 87 (Miss.1996); Lesley v. State, 606 So.2d 1084, 1091 (Miss.1992).
¶ 14. During the trial, the court conducted a suppression hearing outside the presence of the jury to determine whether Harper's statement to the agents was admissible. Agent Nichols testified that he advised Harper of his Miranda[1] rights and that Harper signed the standard form which advised him of his right to remain silent, to consult with an attorney, and also acknowledged that he waived all of his rights pursuant to Miranda. Nichols stated that Harper did not appear to be under the influence of drugs or alcohol and that no threats, rewards, or promises of leniency were made to the Appellant. According to Nichols, he advised Harper to "come clean with what he had done" if he was going to make a statement. Agent Nichols further testified that he accurately wrote down Harper's statement of the events that transpired earlier that day and then permitted Harper to review and sign the form.
¶ 15. On cross-examination however, Nichols acknowledged that prior to giving a statement, Harper asked what could he do to stay out of jail and further acknowledged that in response, he informed Harper that "he could help us with the source, and we wouldn't have to arrest him on the spot, but he would sooner or later be arrested for the charges." (emphasis added). After Harper gave a statement to the agents, Nichols said that he told Harper that "whatever he did to help us in our investigation would be made known to the District Attorney's office, and it would be up to them to make a recommendation to the Court."
¶ 16. Agent Leonard Harrison corroborated Nichols's testimony. He testified that Harper was advised of his rights and that Harper executed a waiver of rights form. Harrison stated that Agent Nichols correctly wrote down Harper's statement which Harper subsequently reviewed and signed. He asserted that no promises or threats were made and that Harper was not under the influence of drugs or alcohol when he waived his rights. According to Harrison, he informed Harper that "he would have to be truthful to us in all regards before he could expect any kind of recommendation to the District Attorney's office from us, based on what he did to assist us."
¶ 17. Contrary to the testimony of the agents, Harper stated that Agent Nichols informed him that "he was going to make sure I gottry to get parole, I would get one year in the County Jail, get probation and one year in the County Jail." Harper also testified that the agents instructed him to drive his vehicle to Morton, Mississippi. After he complied with their instructions, Harper asserted that the agents told him that they would get him a low bond set if he would give them a statement and help them. On rebuttal, Agent Nichols denied that he told Harper he would only receive a one year sentence in the county jail.
¶ 18. When questioned by the trial court, Nichols testified that he never made any promises of leniency or held out a hope of reward to Harper, but only told Harper he *1272 "probably wouldn't lock him up that day, but that he would have charges forthcoming, that that would be a decision for the Court to make as to what would happen to those charges." At the close of the suppression hearing, the trial judge acknowledged that it was a close case; however, he overruled Harper's motion to quash the confession. The judge summarized the testimony as follows:
In this case, it's a pretty close case, I think, of the conversation between this witness and the Defendant. As I understand all the testimony, the testimony is that this Defendant tried to stay out of jail, and that the statement that was made by this witness that he would report everything to the District Attorney for the District Attorney to do what he wanted to do with the case. Your motion to quash is overruled.
¶ 19. A confession obtained as a result of promises, threats, or other inducements is not admissible at trial. Chase v. State, 645 So.2d 829, 837-38 (Miss.1994). The Mississippi Supreme Court has "repeatedly condemned the practice whereby law enforcement interrogators, or related third parties, convey to suspects the impression, however slight, that cooperation by the suspect might be of some benefit." Abram v. State, 606 So.2d 1015, 1031 (Miss.1992) (emphasis added) (citations omitted). In several cases, the supreme court has addressed whether a statement was involuntarily induced from the defendant by an offer of bond or reduced bond. The early case of Blalock v. State, 79 Miss. 517, 522, 31 So. 105, 106 (1902), held that a confession obtained after the arresting officer informed the defendant that he was his friend and "would go on his bond, if necessary," was not admissible.
¶ 20. In Clash v. State, 146 Miss. 811, 814, 112 So. 370, 370 (1927), the defendant confessed in the presence of a store owner that he had stolen money from the store. After the defendant made the confession, he was taken to the local sheriff's office, and his confession was reduced to writing and signed by him. Id. During the trial, the store owner testified that he did not offer the defendant any reward or inducement to make the confession other than informing the defendant that "if he would tell us about the money, and return it, we would let him out of jail on bond." Id. On appeal, the supreme court held that the store owner's statement to the defendant was such an offer of inducement or benefit as to render it involuntary and therefore inadmissible. Id. at 815, 112 So. 370.
¶ 21. Likewise, in Barnes v. State, 199 Miss. 86, 95, 23 So.2d 405, 407 (1945), the defendant confessed to the crime after a detective and the sheriff made statements to the effect that if the defendant would confess, his children would be released from jail. The sheriff also informed the defendant that "the law would be lighter on him if he would confess" and he would sign his bond, if the court would allow such a bond. Id. Upon reviewing the trial court record, the supreme court concluded that the statement was not voluntarily and freely given and therefore reversed and remanded the action for a new trial. Id. at 96, 23 So.2d at 408.
¶ 22. More recently, in Layne v. State, 542 So.2d 237, 240 (Miss.1989), the defendant claimed that his confession was involuntarily induced after law enforcement officers promised him leniency in return for his cooperation. During a suppression hearing, an officer testified that he advised the defendant that the best policy was to tell the truth. Id. at 239. Another officer testified that he informed the defendant that the district attorney would be notified if he (the defendant) would cooperate with the investigation. Id. At the conclusion of the hearing, the trial court made extensive findings of fact and held that the confession was voluntary. Id. at 240. In resolving the alleged error, the supreme court was troubled and noted that it was "hard to imagine any reason why the officers would tell [the defendant] they would advise the district attorney of his cooperation other than to induce [him] to waive his rights and confess.... Such tactics in the course of custodial interrogation comes perilously close to infecting further prosecution of the accused with reversible error." Id. However, the supreme court found that other courts which had considered an officer's statement to convey a defendant's "helpful conduct" to the district attorney had held that such a statement, absent other coercive tactics, did not constitute an implied promise of leniency. *1273 Id. Thus, the court found (1) that the defendant had been informed of his rights; (2) that the officer's promise to inform the district attorney was not accompanied by any further promise of benefit or other persuasive interviewing techniques; and (3) that because the defendant "offered no evidence that the officers' `promise to tell the district attorney' was a proximate cause of his confession, we have no alternative but to affirm." Id. at 241.
¶ 23. With all due deference to the learned trial judge, we find that Harper's statement to the narcotics agents was not freely and voluntarily made but rather was induced by the agents's promises of leniency. After the agents secured the evidence from the vehicle, they transported Harper "to another location to try to keep anybody else from seeing" them so that they could obtain the identity of the drug source. The testimony reveals that when Harper gave his statement to the agents he was eager to stay out of jail. In fact, both agents acknowledged that Harper had asked them what he could do to stay out of jail. Although there is contradictory testimony concerning precisely when Agent Nichols informed Harper that he would convey any cooperation by Harper to the district attorney's office, it is undisputed that Nichols made other promises of leniency before Harper gave his statement or confession. Nichols admitted that he advised Harper that if he would help them with the source, they would not "arrest him on the spot." During examination by the trial court, Nichols testified that he informed Harper that if he cooperated at the time, they probably would not "lock him up that day." Moreover, Harper testified that he gave the statement to the officers because they promised to help him if he would give a statement. Thus, the record is clear that Nichols gave Harper the impression that his cooperation with law enforcement authorities would be beneficial to him in violation of the strict guidelines of our supreme court as shown in Abram v. State that law enforcement officers should refrain from giving such an impression, "however slight." Abram, 606 So.2d at 1031.
¶ 24. Based upon the record before us, we conclude that the statements and the impressions conveyed by the agents to Harper improperly induced him to confess. As the trial court noted, the actions by the agents created a "pretty close case." However, we find that the inducement crossed over the line of permissibility and rendered the statement involuntary. Consequently, this action is reversed and remanded for a new trial consistent with the rulings in this opinion.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE TAXED TO SCOTT COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE AND SOUTHWICK, JJ., CONCUR.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).