735 So.2d 1059 (1999)
Randy BECKHAM a/k/a Randy Curtis Beckham, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00724-COA.
Court of Appeals of Mississippi.
March 23, 1999.
*1060 Samuel H. Wilkins, Jackson, Attorney for Appellant.
Office of the Attorney General by Dewitt T. Allred III, Attorney for Appellee.
BEFORE THOMAS, P.J., LEE, PAYNE, AND SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. This case is before the Court challenging the judgment of the Circuit Court of Simpson County of conviction of manslaughter arising out of the negligent operation of a motor vehicle and sentence of twenty years in the custody of the Mississippi Department of Corrections. After having his motion for a new trial overruled, the appellant, Randy Beckham, perfected this appeal raising four issues for our review: 1) whether the evidence presented was sufficient to sustain the conviction, 2) whether the trial court erred in overruling Beckham's motion for mistrial after an investigating officer testified that Beckham was traveling at least seventy miles per hour at the time of the accident, 3) whether the trial court erred in not allowing Beckham's counsel sufficient time for voir dire, and 4) whether the trial court erred in not granting Beckham's proposed Jury Instruction D-12.
¶ 2. After a review of the record, briefs, and applicable precedents, we find no error. Accordingly, we affirm the conviction and sentence in this case.

FACTS
¶ 3. In the early morning hours of June 18, 1995, Beckham and his passenger were traveling south on U.S. Highway 49 in D'Lo in a 1988 Lincoln. In front of Beckham was Linda Joiner, also traveling south on U.S. 49 in a 1990 Pontiac. Beckham's Lincoln struck Joiner's Pontiac from behind. The crash resulted in both cars overturning, and Joiner was killed. Beckham and his passenger were injured and *1061 transported to Simpson County General Hospital. Once at the hospital, Beckham consented to a blood test, the results of which showed that Beckham had .12% concentration of alcohol in his blood. On June 20, 1995, Beckham was given his Miranda warnings and voluntarily spoke with law enforcement officials concerning the accident, indicating that he was the driver of the automobile and that he had not seen Joiner's vehicle until it was impossible for him to avoid the fatal collision.
¶ 4. Beckham was indicted on one count of manslaughter by culpable negligence in Joiner's death. After a two day trial, Beckham was convicted and subsequently sentenced to serve the maximum term of twenty years in the custody of the Mississippi Department of Corrections.

DISCUSSION AND ANALYSIS

Sufficiency of the Evidence
¶ 5. In his first assignment of error, Beckham asserts that there was insufficient evidence to support a conviction of culpable negligence manslaughter under Miss.Code Ann. § 97-3-47 (Rev.1994). Beckham maintains that his operation of the Lincoln while intoxicated alone was not sufficient for a finding of culpable negligence. Beckham says there was no evidence that he was driving erratically and no evidence regarding the speed of Joiner's vehicle at the time of the collision. In addition, Beckham stresses that it is unclear as to how fast he was traveling at the time of impact, although he did admit to law enforcement authorities that he was traveling around seventy miles per hour. Further, Beckham notes that there was no specified cause determined for Joiner's death and that there was conflicting testimony with regard to the impact point of the vehicles at the time of the crash.
¶ 6. Since an argument regarding the sufficiency of the evidence requires consideration of the evidence before the trial court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the court below. This occurred when the circuit court overruled Beckham's motion for a JNOV. Wetz v. State, 503 So.2d 803, 807-08 (Miss.1987). Both motions for directed verdict and motions for a JNOV challenge the legal sufficiency of the evidence. Noe v. State, 616 So.2d 298, 302 (Miss.1993). Where a defendant moves for a JNOV, the trial court considers all of the credible evidence consistent with the defendant's guilt, giving the prosecution the benefit of all favorable inferences that may be reasonably drawn from the evidence. McClain v. State 625 So.2d 774, 778 (Miss.1993).
¶ 7. We begin by addressing the law in Mississippi with regard to culpable negligence manslaughter in the course of operating a motor vehicle: "In order to obtain a conviction under § 97-3-47 for vehicular manslaughter, `it must be proved beyond a reasonable doubt that the defendant was guilty of culpable negligence.'" Hopson v. State, 615 So.2d 576, 578 (Miss. 1993) (quoting Stever v. State, 503 So.2d 227, 229 (Miss.1987)). Proof that Beckham "was guilty of such gross negligence ... as to evince on his part a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of his act under the surrounding circumstances as to render his conduct tantamount to wilfulness...." Hopson, 615 So.2d at 578 (quoting Dickerson v. State, 441 So.2d 536 (Miss.1983); Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945)).
¶ 8. Moreover, "while driving ... under the influence of intoxicating liquor is a crime in and of itself.... [T]his in itself does not constitute culpable negligence, nor does it make what would otherwise be no more than a negligent act in operating a motor vehicle culpable negligence under the meaning of the statute." Hopson, 615 So.2d at 578 (quoting Craig v. State, 520 So.2d 487, 492 (Miss.1988)). However, the operation of a motor vehicle while under the influence of intoxicants may "be considered as an element constituting gross *1062 and careless disregard for the value of human life," and further, it may be a factor indicating criminally culpable negligence if the influence of intoxicants proximately contributed both to the negligence of the defendant and to the resulting death. Hopson, 615 So.2d at 578 (citing Gibson v. State, 503 So.2d 230, 233 (Miss.1987); Whitehurst v. State, 540 So.2d 1319, 1327-28 (Miss.1989)).
¶ 9. The testimony at trial was of a nature that the jury could have reasonably found that Beckham's intoxication while operating the Lincoln was the proximate cause of the crash with Joiner's vehicle that resulted in her death. As to what effect driving while intoxicated can have on one's culpable negligence, the intoxication "must create an abnormal mental and physical condition which tends to deprive one of the clearness of intellect and control of himself which he would otherwise possess." Hopson, 615 So.2d at 578 (citing Evans v. State, 562 So.2d 91, 95 (Miss. 1990) (other citations omitted)).
¶ 10. The applicable law set forth, we turn to the merits of Beckham's challenges to the sufficiency of the evidence, and we find they are without merit. Accordingly, this alleged error is overruled. The collective evidence was the following: the .12% concentration of alcohol in Beckham's blood, his lawful admission to investigators that he was traveling approximately seventy miles per hour at the time of the crash, and the testimony of Simpson County Coroner Robert Williams, Mississippi State Trooper Johnny Rawls, Jeff Herrin, and accident reconstructionist Cecilia Kazery, along with the reasonable inferences flowing from all the evidence, sufficiently established the requisite antecedent link between Beckham's operation of the motor vehicle in an intoxicated state and the car crash that resulted in Joiner's death. Beckham's conduct demonstrated a sufficient wanton and reckless disregard for the safety of human life and an apathy for the consequences of his actions as to make that conduct comparable to wilfulness. As such, Beckham's challenge to the sufficiency of the evidence is not well taken and is overruled.

Testimony of the Accident Reconstructionist
¶ 11. Beckham's next designation of error surrounds the testimony of the accident reconstructionist, Cecilia Kazery, about Beckham's admission that he was traveling at least seventy miles per hour at the time of the crash. Beckham claims that Kazery's testimony about his admission of speed was unduly prejudicial because there was no proffer that the admission was made voluntarily and freely after Beckham had been given his Miranda warnings. Beckham, relying on McElroy v. State, 204 So.2d 463, 465 (Miss.1967), claims that he was entitled to a separate hearing outside the presence of the jury on the admissibility of the confession before the contents of the statement were allowed into evidence. We are unmoved by this argument. First, the testimony complained of by Beckham was elicited during cross-examination, and "[i]t is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial." Fleming v. State, 604 So.2d 280, 289 (Miss.1992) (citations omitted). However, even aside from this fatal defect in Beckham's argument, Beckham's argument still fails on its face. McElroy concerned a statement made by the defendant to the victim regarding the defendant's involvement in the theft of cattle after the defendant was in custody. The supreme court specifically held that the Miranda rule did not apply to statements made to private persons. Id. Yet, for a statement made while in custody to be admissible against a defendant, "it is necessary to establish, in order that a confession, made under circumstances such as those disclosed by the evidence in this case, may become competent against the accused, that it was freely and voluntarily made and was not the result of coercion or induced by promises." Id.
*1063 ¶ 12. At the time of Kazery's testimony regarding Beckham's statement with regard to his speed on the morning of the fatal accident, the competency of the admission had not been established because Beckham's statement had not been introduced into evidence. However, the prosecution, through Jeff Herrin's testimony, established that Beckham was given his Miranda warnings on the day of the statement prior to his speaking to law enforcement officials. The form, signed by Beckham and captioned "Miranda Warning" set forth Beckham's rights under Miranda as well as a wavier of those rights. Beckham's signature appears on the acknowledgment of his rights having been explained to him as well as on the wavier of those rights. Herrin's testimony established that Beckham was not threatened, coerced, or otherwise unduly influenced in his decision to waive his rights and make a voluntary statement. Accordingly, this assignment of error is overruled.

Time Limitation for Jury Voir Dire
¶ 13. Beckham's next complaint lies with the trial court's limitation of voir dire to fifteen minutes per side. This claim is meritless. URCCCP 3.05 provides:
In the voir dire examination of jurors, the attorney will question the entire venire only on matters not inquired into by the court. Individual jurors may be examined only when proper to inquire as to answers given or for other good cause allowed by the court. No hypothetical questions requiring any juror to pledge a particular verdict will be asked. Attorneys will not offer an opinion on the law. The court may set a reasonable time limit for voir dire.
In the case sub judice, both the prosecuting attorney and Beckham's counsel were given fifteen minutes for voir dire. Further, Beckham's counsel was granted two extensions beyond this fifteen minutes. We cannot find any prejudice suffered by Beckham flowing from the trial court's fifteen minute limitation for voir dire of the jury venire. Accordingly, this designation of error is not well taken and is overruled.

Disallowance of Proposed Jury Instruction D-12
¶ 14. As his final allegation of error, Beckham maintains that the trial court committed error in denying his requested jury instruction D-12. We disagree. The proposed instruction read as follows:
The Court instructs the jury that to determine whether the defendant was criminally negligent in operating his motor vehicle, you must find that the State has proven each of the following elements beyond a reasonable doubt:
1) That the defendant's actions at or before the accident scene created a substantial, unjustified risk that a death would occur;
2) that the defendant failed to perceive that risk;
3) that a reasonable man in the same circumstances as the defendant would have known that he was creating a substantial, unjustified risk that a death would occur; and,
4) that the defendant's failure to perceive that risk was a gross deviation from the standard of care of a reasonable person under the same circumstances.
If the State fails to prove one or more of the above elements beyond every reasonable doubt, it is your sworn duty to find the defendant, Randy Beckham, not guilty.
(emphasis in original)
The standard of review applicable to jury instructions in Mississippi is well-established. When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed. Burton By Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993); Taylor v. State, 597 So.2d 192, 195 (Miss.1992); Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 *1064 (Miss.1989); Byrd v. F-S Prestress, Inc., 464 So.2d 63, 66 (Miss.1985). If all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.
¶ 15. After reviewing all of the instructions given by the trial court, we are satisfied that those instructions provided the jury with the applicable law with regard to negligent manslaughter. Instruction S-2a, Instruction S-3, and Instruction D-11 combined to provide the substantive points contained in Instruction D-12. Accordingly, as Instruction D-12 would have been cumulative, the trial court did not err by refusing to grant the same.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY OF CONVICTION OF ONE COUNT OF NEGLIGENT MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED WITH SENTENCE TO RUN CONSECUTIVELY TO SENTENCE PREVIOUSLY IMPOSED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.