PROCEDURAL HISTORY AND SUMMARY OF ISSUES
¶ 1. This matter is before the Court challenging the judgment of the Hancock County Circuit Court of conviction of one count of sexual battery and sentence of fifteen years in the custody of the Mississippi Department of Corrections. After an unsuccessful motion for JNOV, Mullins perfected this appeal challenging the sufficiency of the evidence, the voluntariness of his statement to police, certain testimony admitted at his trial that he alleges to be inadmissible hearsay, and the alleged improper instruction of the jury in this matter.
¶ 2. Finding no merit in Mullins' assignments of error, we affirm the conviction and sentence in this case for the reasons set out in this opinion.
 FACTS
¶ 3. On February 19, 1997, four year old J.G.[1] slept overnight with her grandparents. J.G. slept in the bed with her grandmother, while her grandfather, Albert Mullins, slept in a separate room. The next morning, after the grandmother had gone to work, Mullins summoned J.G. to his room. According to J.G., Mullins pulled down her underpants and "stuck his finger in my tomcat," a term determined to mean her vagina. When J.G.'s mother picked her up from the Mullins's home, J.G. told her mother that her "tomcat" hurt. On examination, J.G.'s mother noticed redness and apparent irritation and took the child to a physician. The examining physician noted irritation and redness and testified that the child told him that her grandfather had put his finger in her "tomcat."
¶ 4. Gulfport police were contacted, and Investigator Glenn Strong questioned Mullins who admitted to sexually battering J.G. An indictment followed to which Mullins pled not guilty. After a jury trial, Mullins was convicted of one count of sexual battery.
 ISSUE ANALYSIS AND DISCUSSION WHETHER MULLINS'S STATEMENT TO INVESTIGATOR STRONG WAS FREELY AND VOLUNTARILY GIVEN.
¶ 5. Mullins claims that his statement to Investigator Strong was not freely and voluntarily given because he requested counsel prior to giving the statement. Further, Mullins maintains that Strong and Investigator Hurt coerced him into giving the statement by force and promise of reward for his cooperation. Finally, Mullins asserts that his original statement was altered by law enforcement authorities. The circuit court held a suppression hearing regarding the statement given by Mullins to Investigator Strong.
¶ 6. Testifying on behalf of the State at the suppression hearing was Investigator Glenn Strong of the Hancock County Sheriff's Department. Strong testified that *Page 1030 
Mullins was advised of his Miranda rights prior to giving the statement at issue. According to Strong, Mullins appeared coherent, did not appear to be intoxicated, and freely waived his right to counsel before giving the statement. According to Strong, and contrary to Mullins's assertion, Mullins never requested the assistance of an attorney. Strong testified that no force was employed nor was there any intimidation of Mullins in the process of taking his statement, denying Mullins's claims that Strong struck him with a phone book, that Strong shoved his head down in front of the desk, that Strong kicked Mullins's chair out from under him causing his head to hit the wall, that Strong invited Mullins to put himself out of his misery and commit suicide, that Strong displayed weapons before Mullins in a coercive and threatening manner, and that Strong told Mullins that he would be "taken care of" at Parchman, one of three State penitentiaries. Strong did testify that after J.G. and her mother arrived at police headquarters and J.G. had refused to say anything to Strong in Mullins's presence. Mullins executed a voluntary waiver of rights form prior to giving his statement. This voluntary waiver of rights form is read on the tape-recorded statement given by Mullins. On the tape of the interview, Strong, when advising Mullins of his right to an appointed attorney, advises Mullins that if he desires counsel but cannot afford one, then one will be appointed by the proper authority, "which happens to be me," referring to Strong. Also, Strong promised Mullins that the district attorney and the trial court would be made aware of his cooperation in giving a statement. Kenneth Hurt corroborated Strong's recollection of events. Hurt denied Mullins's accusation that Hurt threatened to slap him.
¶ 7. Mullins's wife testified that on the evening of her husband's interrogation, her husband looked like "a semi-trailer" had hit him, and he looked "wild." She testified that he did not look that way when he left their home to go to the sheriff's office earlier that day.
¶ 8. At the conclusion of the suppression hearing, the trial court made a factual finding that, based on the totality of the circumstances, Mullins's statement was freely, voluntarily, and intelligently given. Aside from Mullins's assertions and his wife's testimony that he looked substantially different at the police station that evening than when he left their home in the late afternoon, Mullins offers no other support for his allegations of physical, verbal, and psychological abuse by Strong and Hurt.
¶ 9. Regarding the overruling of a motion to suppress by the circuit court, our scope of review is limited. "Once the trial judge has determined at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in attempting to reverse that decision on appeal." Sills v. State,634 So.2d 124, 126 (Miss. 1994) (quoting Frost v. State,483 So.2d 1345, 1350 (Miss. 1986)). "Such findings are treated as findings of fact made by a trial judge sitting without a jury as in any other context. As long as the trial judge applied the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." Foster v. State,639 So.2d 1263, 1281 (Miss. 1994) (citations omitted). "Where, on conflicting evidence, the court makes such findings, this Court generally must affirm." Lesley v. State, 606 So.2d 1084, 1091 (Miss. 1992) (citations omitted).
¶ 10. Mullins relies on one of this Court's cases, Harper v. State,722 So.2d 1267 (Miss. Ct. App. 1998) in support of his position that promises of leniency made to a suspect constitute reversible error. However, we find Harper is clearly distinguishable from the case at bar. In Harper, we reversed the conviction of a marijuana trafficker because of a coerced statement given to the police by Harper. In that case, Harper asked the officers what he *Page 1031 
could do to stay out of jail. The officers responded that if Harper helped them by providing the source of his marijuana, he would not be arrested at that point. Harper testified that he gave his statement based on that promise of assistance. In Harper, we noted that it was "a pretty close case" but found sufficient evidence to render Harper's statement involuntary. Id. at 1272 (¶ 24).
¶ 11. As in Harper, this case is a close case, though one we resolve against Mullins. Strong's promise to Mullins to share with the district attorney and the trial court Mullins's cooperation with law enforcement was not coercive. Our supreme court has discouraged law enforcement authorities from advising in-custody suspects that their cooperation will be relayed to the prosecuting authority and trial court:
 It is hard to imagine any reason why the officers would tell [Mullins] that they would advise the district attorney of his cooperation other than to induce [Mullins] to waive his rights and confess. Such tactics in the course of custodial interrogation comes perilously close to infecting further prosecution of the accused with reversible error.
Layne v. State, 542 So.2d 237, 240 (Miss. 1989). We reiterate this caution today. Nevertheless, such advice is not necessarily fatal to a suspect's otherwise voluntary statement. The Layne rule requires more: suspects must demonstrate that the promise by law enforcement was the "proximate cause" of the statement in issue.Id.
¶ 12. In the case sub judice, the tape-recorded statement reveals that Investigator Strong did indeed tell Mullins that if he cooperated, the district attorney and the trial judge would be informed that he had cooperated by giving a statement. During the taped discussion of rights, Mullins initially said that Strong had promised him that he would get Mullins mental treatment. However, Strong stopped the discussion with Mullins and clarified that Strong did not make such a promise about mental health treatment nor any other promises other than his promise to inform the district attorney and the trial court that Mullins had cooperated. Strong also indicated to Mullins that he (Strong) was the authority who would appoint him counsel if he so desired. However, after listening to the taped statement, Mullins acknowledges that the court would appoint him counsel if he desired. Further, Strong explained to Mullins on the tape recording that if Mullins desired to seek the assistance of counsel, Strong would cease questioning at that point or at any point when Mullins decided he wanted to speak to an attorney. Mullins acknowledged his understanding of his right to counsel. While Strong's words in this regard were less than desirable, it is clear that Mullins was not misled by that statement.
¶ 13. Finally, Mullins suggests that the statement is faulty because Strong altered it after the statement was concluded. Strong did admit writing in the word "tape" on the voluntary statement form to indicate that the statement was taped and not written. In the recording, Mullins acknowledges that the statement is being recorded and not written. This assignment of error is without merit. We find that Mullins voluntarily, knowingly, and intelligently gave the statement in issue. Accordingly, this assignment of error has no merit.
 WHETHER THE CHILD-VICTIM WAS A COMPETENT WITNESS.
¶ 14. Mullins challenges the competency of J.G. as a witness against him. The trial court conducted a competency hearing outside the presence of the jury. Both the district attorney, Mullins's trial counsel, and the trial judge questioned the child. J.G. testified that she knew the difference between the truth and a lie and that she had not been told what to say. The trial court determined that she was a competent witness. Rule 601 of the *Page 1032 
Mississippi Rules of Evidence provides that all witnesses are competent to testify absent a demonstration that they are incompetent or otherwise disqualified to offer testimony. Further, the general rule in Mississippi is to allow children of tender years to testify if they are determined to be competent. Collierv. State, 711 So.2d 458, 463 (Miss. 1998). Moreover, the issue of the competency of a child witness is a matter left to the sound discretion of the trial court after determining that the child possesses "the ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness." Mohr v. State,584 So.2d 426, 431 (Miss. 1991) (citing House v. State,445 So.2d 815, 827 (Miss. 1984)). It appears the trial court complied with these requirements. There is no error in this regard.
 WHETHER THE STATEMENTS OF THE CHILD-VICTIM TO OTHERS CONSTITUTES INADMISSIBLE HEARSAY.
¶ 15. Mullins next challenges the admission of the statements made by J.G. to others about Mullins's offense. Mullins filed a motionin limine to exclude those statements, and the trial court conducted a lengthy hearing in this regard. Ultimately, the trial court admitted all of the statements in issue. Mullins here challenges those statements, relying on Griffith v. State,584 So.2d 383 (Miss. 1991). Griffith provides the trial court must make an overall determination "whether the child declarant was particularly likely to be telling the truth when the statement was made." Id. at 388.
¶ 16. The first statement at issue in the motion in limine was a statement made by J.G. to her mother, D.G., after D.G. picked up J.G. from the Mullins home. J.G. told D.G. that she hurt in her private area. On examining the child, D.G. discovered irregularity at which point J.G. told her that Mullins had put his finger inside her. D.G. testified that she in no way led J.G. or suggested that J.G. should accuse Mullins of this crime.
¶ 17. The second statement at issue was made by J.G. to Investigator Strong. Strong testified that J.G. told him that her pawpaw (Mullins) put his finger inside her while she was in his bedroom at the Mullins home. The third statement in issue was a similar statement by J.G. identifying Mullins as the perpetrator of the sexual battery against J.G. made to Connie Aime, a child abuse investigator with the Hancock County Department of Human Services.[2] The final statement challenged by Mullins is that of Dr. Sean Brian Appleyard, J.G.'s treating physician. J.G., consistent with her statements to D.G., Strong, and Aime, told Appleyard that Mullins had stuck his finger in her "tomcat."[3]
¶ 18. The statements made to D.G. and Strong are admissible under the tender years exception to the hearsay rule, which is MIRE 803(25). This rule provides:
 A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act. *Page 1033 
Our decisional law interprets this rule as written: "[i]n order for an out-of-court statement to be admissible under Rule 803(25), the court must determine (1) that the declarant is a child of tender years and (2) that `the time, content, and circumstances of the statement provide substantial indicia of reliability. . . .'"Veasley v. State, 735 So.2d 432, 436 (¶ 14) (Miss. 1999). It appears that the trial court complied with this requirement. There is no error here.
 WHETHER THE JURY WAS PROPERLY INSTRUCTED.
¶ 19. Mullins maintains that the jury was improperly instructed. However, he only makes a blanket assertion without challenging specific instructions. Further, there is no contemporaneous objection to the instructions in the record. Thus, the issue of instructions is waived. Goldman v. State, 741 So.2d 949, 955 (Miss. Ct. App. 1999).
 WHETHER THERE WAS SUFFICIENT EVIDENCE TO CONVICT MULLINS OF THE CRIME OF SEXUAL BATTERY.
¶ 20. This is Mullins's first assignment of error in his brief, but is addressed last. Mullins maintains that there was insufficient evidence to maintain the conviction because his statement was coerced, J.G. was an incompetent witness, and J.G.'s treating physician's testimony was inconclusive. Mullins also maintains that this conviction was secured in part by his alleged past conduct.
¶ 21. Of course, this Court's standard of review for challenges to the sufficiency of the evidence is sorely limited and is considered from the last point raised at trial — in the case subjudice the motion JNOV. "[T]he sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with . . . guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence." McClain v. State, 625 So.2d 774, 778 (Miss. 1993) (citations omitted). Further, "[a] challenge to the sufficiency of the evidence requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty." Jones v. State,743 So.2d 415, 419 (¶ 16) (Miss. Ct. App. 1999) (citing May v.State, 460 So.2d 778, 781 (Miss. 1984)). If the analysis leads to a conclusion that a reasonable hypothetical juror could find the accused guilty beyond a reasonable doubt, then the evidence is sufficient to sustain the conviction. Id.
¶ 22. In the case sub judice, we have already decided two of Mullins's specific challenges to the sufficiency of the evidence. Mullins's statement to Investigator Strong was not coerced, and J.G. was a competent witness. Thus, these two challenges to the sufficiency of the evidence are resolved against Mullins. With regard to Dr. Appleyard's testimony, we find it was competent and relevant, and while not conclusive as to the exact cause of J.G.'s irritation, J.G. told Appleyard that Mullins was the perpetrator. This challenge to the sufficiency of the evidence is resolved against Mullins.
¶ 23. Finally, Mullins asserts that his alleged past behavior was used to secure this conviction. However, Mullins provides us with no citations to the record in this regard. However, in our independent review of the record, we find two instances that would be consistent with Mullins's general assignment of error. First, D.G., the child-victim's mother, testified at the motion in limine
that J.G. had alleged similar abuse by Mullins before to the grandmother. However, J.G. never related the same to D.G., and the testimony was not before the jury. Therefore, Mullins suffered no prejudice.
¶ 24. In another portion of trial testimony, D.G. testified that Mullins, D.G.'s father, sexually abused her as a *Page 1034 
child. While this certainly would go to Mullins's past behavior, this testimony came on cross-examination elicited from D.G. by Mullins's attorney. It is a well-settled principle of law that Mullins cannot complain on appeal of alleged error created by evidence elicited by him at trial. Beckham v. State, 735 So.2d 1059, 1062 (¶ 11) (Miss. Ct. App. 1999). Furthermore, no objections were raised by Mullins to the testimony; thus, the issue is waived. Patton v. State,742 So.2d 150, 154 (Miss. Ct. App. 1999).
¶ 25. We find sufficient evidence to sustain the conviction and overrule this assignment of error.
¶ 26. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OFCONVICTION OF SEXUAL BATTERY AND SENTENCE OF FIFTEEN YEARS IN THECUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THEPOSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARETAXED AGAINST HANCOCK COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, IRVING, LEE,MOORE, AND THOMAS, JJ., CONCUR.
[1] Both the Attorney General and counsel for Mullins use the full name of the child-victim throughout their respective briefs. While it is necessary to use the names of the victims in trial proceedings, we strongly discourage this practice beyond the trial level. The parties in cases involving child-victims on appeal are strongly encouraged to use an alternative means of identification in their briefs and other pleadings before this Court. This Court has the benefit of the trial record, and it is unnecessary for the parties to use the child-victim's full name. While it is obviously necessary to make reference to the child-victim in the appellate pleadings and opinions, there is no useful purpose in revealing the full names of child victims. To this end, this Court, in an effort to prevent any further trauma to the child-victim from these proceedings, will identify her in a less obvious manner.
[2] Connie Aime did not testify at the trial and thus is irrelevant to this appeal. We include Aime in our discussion only because Mullins raises her statement in brief.
[3] Though challenged in brief under Mullins's challenge to statements admitted into evidence under MRE 803(25), the record indicates that the trial court admitted Dr. Appleyard's testimony under MRE 803(4) as a statement given for purposes of medical diagnosis and treatment. Mullins did not object the trial court's action in this regard.