# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00185-COA

**CHRISTOPHER SMITH A/K/A CHRISTOPHER ANTHONY SMITH A/K/A CHRISTOPHER A. SMITH A/K/A CHRIS SMITH**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/2022 |
| TRIAL JUDGE: | HON. JOHN R. WHITE |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/07/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Christopher Smith was convicted of one count of sexual battery of a minor and sentenced accordingly.  Smith now appeals his conviction, arguing that his confession during custodial interrogation was involuntary, and as a result, the Monroe County Circuit Court erred by admitting his confession into evidence.  Smith also argues that the trial court erred by allowing Smith's trial to proceed in his absence.

¶2.     Finding no error, we affirm Smith's conviction and sentence.

## FACTS

¶3.     C.B.[1] testified that in June 2014, Christopher Smith sexually assaulted her.  At the time of the assault, C.B. was six years old, and Smith was fifteen years old.  C.B. immediately reported the incident to her mother, identifying Smith as the perpetrator.  C.B.'s mother took her to a hospital in Amory, Mississippi, where C.B. was examined by nurse Kathy Franks, a sexual assault nurse examiner.  Franks testified that she observed signs of trauma to C.B.'s pelvic area.  Franks also performed a rape-kit examination on C.B.  Investigators with the Monroe County Sheriff's Office sent the rape kit to the Mississippi Forensics Laboratory for testing.  Test results revealed the presence of seminal fluid in C.B.'s underwear; however, the sample from the rape kit was too small to be tested for the presence of DNA.

¶4.     John Michael Lay, an investigator with the Monroe County Sheriff's Department, arrived at the hospital and interviewed C.B., C.B.'s mother, and Franks.  Based on C.B.'s identification of Smith as the person who assaulted her, Smith was arrested and transported to the sheriff's office.

¶5.     After Smith signed a waiver of his *Miranda*[2] rights, Investigator Lay and Investigator Brandon Davis interrogated him.  Smith initially denied any inappropriate contact with C.B.  However, Smith eventually admitted to the investigators that he sexually penetrated C.B.  Investigators asked Smith to draw a picture of his penis to show how far he penetrated C.B.  Investigators also asked Smith to write a letter to his parents apologizing "for putting them

---

[1] In the interest of the victims' privacy, initials have been substituted for their names.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

into this situation."

¶6.	A Monroe County grand jury indicted Smith for sexual battery of a minor under the age of fourteen years old, in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014). Smith filed a motion requesting a mental examination. The trial court granted the motion, and Dr. Chris Lott, a clinical and forensic psychologist, performed an evaluation of Smith. After completing the evaluation, Dr. Lott submitted a report stating that Smith was competent to stand trial. Smith also filed a motion to suppress his confession, drawing, and letter to his parents. After a hearing, the trial court denied the motion.

¶7.	After years of continuances, a trial was finally held in September 2022. Smith failed to appear in court, and Smith was tried in absentia. The jury heard testimony from C.B., C.B.'s mother, Franks, Investigator Lay, and A.O., who testified that in 2021, when she was twelve years old, Smith sexually assaulted her on two separate occasions.[3]

¶8.	The jury eventually returned a verdict finding Smith guilty of sexual battery of a minor under the age of fourteen years old. The trial court sentenced Smith to forty years in the custody of the Mississippi Department of Corrections, with twenty years suspended and twenty years to serve, and five years of post-release supervision.

¶9.	After the denial of Smith's post-trial motions, including a pro se motion for a new trial, this appeal followed.

## DISCUSSION

---

[3] The State moved to allow testimony from A.O. under Mississippi Rule of Evidence 404(b) to establish Smith's motive, opportunity, and a common plan and scheme. After a hearing on the matter, the trial court determined that A.O.'s testimony was admissible.

## I. Coerced Admission

¶10. Smith argues that the trial court erred by ruling that his confession was admissible at trial. Smith claims that his confession to investigators during custodial interrogation was coerced and resulted from offers of leniency, and therefore it was not freely, voluntarily, and knowingly made. Specifically, Smith asserts that the investigators induced him into making an involuntary statement where he admitted to sexually penetrating C.B. in order to avoid harsh treatment by the courts and prison inmates. Smith maintains that the investigators repeatedly told Smith that they would "help" him if he told "the truth." As a result, Smith asserts that he is entitled to a reversal of his conviction and a new trial.

¶11. This Court reviews the admission or exclusion of evidence for abuse of discretion. *Fortenberry v. State*, 195 So. 3d 890, 893 (¶11) (Miss. Ct. App. 2016). We recognize that "for a confession to be admissible at trial it must have been intelligently, knowingly and voluntarily given, and not a product of police threats, promises or inducements." *Wilson v. State*, 936 So. 2d 357, 361 (¶8) (Miss. 2006). The Mississippi Supreme Court has explained that "[a] confession is voluntary when, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." *Id*. at 361-62 (¶8). "In determining whether a defendant's confession was intelligently, knowingly and voluntarily given the trial court sits as a finder of fact." *Id*. at 361 (¶8). We will reverse the trial court's decision regarding the voluntariness of a confession "only upon finding the ruling was manifestly erroneous or contrary to the overwhelming weight of evidence." *Johnson v. State*, 129 So. 3d 148, 151 (¶11) (Miss. 2013).

4

¶12. In cases like the one before us where "a defendant claims that the police have induced a confession through coercion[,] the trial court is required to hold a hearing to determine the voluntariness of that confession." *Wilson*, 936 So. 2d at 362 (¶9). The hearing must be held outside of the presence of the jury, and the State possesses the "burden of proving the voluntariness of the confession via testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion or offer of reward." *Id.*; *see also Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966). When the defendant is a minor, a trial court must also evaluate "the circumstances surrounding the interrogation," including "the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Jennings v. State*, 127 So. 3d 185, 191 (¶9) (Miss. 2013) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)); *see also McGowan v. State*, 706 So. 2d 231, 235 (Miss. 1997). Once the State has established a prima facie case that the confession was voluntary, "[t]he defendant must rebut the State's prima facie case by offering testimony that violence, threats of violence, or offers of reward induced the confession." *Ruffin v. State*, 992 So. 2d 1165, 1169 (¶9) (Miss. 2008) (internal quotation marks omitted).

¶13. Prior to trial, Smith filed a motion to suppress his inculpatory interrogation comments, the letter to his parents, and the drawing of his penis. Smith challenged his purported waiver of his *Miranda* rights based on his young age and inexperience, and he also challenged the voluntariness of his confession. Smith argued that the investigators promised him leniency

5

in exchange for Smith confessing to the sexual battery of C.B. Smith attached the transcript of his interrogation to the motion.

¶14. The trial court held a hearing on the motion outside the jury's presence and ultimately determined that based on the totality of the circumstances, including Smith's "age, intelligence, and the circumstances related to the interrogation or the questioning by the officers involved," Smith's confession, letter, and drawing were admissible. The trial court explained that due to the nature of the crime, Smith's age "has no special bearing on his ability to be questioned without a parent and voluntarily waive his rights." The trial court also referenced Dr. Lott's evaluation of Smith and his determination that Smith was competent to stand trial.

¶15. The supreme court has explained that "[o]nce a trial judge determines admissibility, the defendant/appellant faces a heavy burden in trying to reverse on appeal." *Ruffin*, 992 So. 2d at 1169 (¶8). As stated, we will not reverse the trial court's finding that Smith's confession was voluntary and admissible "so long as the court applied the correct principles of law and the finding is factually supported by the evidence." *Id*.

¶16. The record reflects that based on C.B.'s statement to Investigator Lay, Smith was arrested and transported to the sheriff's department. The transcript from Smith's interview reflects that Investigator Lay and Investigator Davis advised Smith of his *Miranda* rights. The investigators also read the *Miranda* waiver form to Smith, making sure he understood each individual right. After Smith signed the *Miranda* waiver, the investigators began interrogating him.

¶17. Smith argues that his age is "a crucial factor" in determining whether his confession was voluntary. The record reflects that at the time of the incident and his interrogation, Smith was fifteen years old. Smith did not have a parent present during his interrogation, and he never requested that a parent be present. Regarding Smith's age, the supreme court has held "that minors can be treated as adults in such circumstances and are allowed to waive their rights and confess to a crime." *Eskridge v. State*, 765 So. 2d 508, 511 (¶16) (Miss. 2000) (citing *Clemons v. State*, 733 So. 2d 266, 269 (¶¶8-12) (Miss. 1999)). Therefore, a juvenile's age "is seldom per se conclusive that a confession was not freely and voluntarily given." *Clemons*, 733 So. 2d at 269 (¶11). Additionally, because the circuit court has original jurisdiction over the crime of sexual battery of a minor under the age of fourteen years old, Smith was not entitled to have a parent present during his interrogation. *See* Miss. Atty. Gen. Op., 2001-0240, 2001 WL 668779, *Caranna*, at *1 (May 4, 2001) ("[A] person under the age of eighteen, who attempts to commit a sexual battery or rape someone who is 24 months younger, falls within the purview of the [c]ircuit court."); *Clemons*, 733 So. 2d at 269-70 (¶¶13-14).

¶18. The interrogation transcript reflects that Smith initially denied any physical contact with C.B. The investigators urged Smith to tell the truth and stop lying. Investigator Lay asked Smith if he was aware that a conviction for sexual battery could result in Smith going to jail "for the rest of [his] life," and Smith responded, "I'm not worried about it, cause I know I didn't touch her at all." Investigator Davis reiterated that Smith could be sentenced to life in prison if he was found guilty, asking Smith:

> You know what prison's like? . . . [W]ould you like to take a shower with another man standing there looking at you? Or use the bathroom? Take a crap with another man standing there. Or sleep in the bed right beside one[?] . . . [Because] that's the kind of life that you looking at living. All because you want to sit here, you want to act bad, you want to act tough.

Smith continued to deny having any physical contact with C.B. Investigator Davis told Smith: "We're here trying to get you some help. Ok. And lying to us is not gonna get you any help. Lying to us and stuff will get you in deeper trouble. . . . I want you to understand that." Investigator Davis also stated that he could inform the trial judge that Smith was helpful to the investigators and therefore needed help in return: "He helped us out on this," so "[l]et's help him." Or Investigator Davis could tell the judge that Smith was not helpful.

¶19. Finally, Investigator Davis warned Smith that once the investigators received the DNA results from Smith's buccal swab and the rape kit, it would be too late for the investigators to help Smith or talk to the judge. Smith eventually confessed to having some physical contact with C.B., though he claimed that the contact was accidental on his part and that C.B. kept "messing" with him sexually.

¶20. Investigator Davis then gave Smith a piece of paper and a pen and instructed him to "draw a private picture . . . of your privates and just tell us just how much maybe touched her with it." Investigator Davis stated that he needed to be able to explain how Smith's seminal fluid got on C.B.'s clothes and body. Smith then admitted that he had told investigators only half of the truth. Investigator Lay responded, "I want the whole truth[,] [Smith]. I don't want half the truth. I need the whole truth. We can't help you if you can't tell us the truth. Can you tell us the truth?" In response, Smith told the investigators that his penis touched

8

C.B.'s vagina. Smith again claimed that the contact was accidental, explaining that while C.B. was "messing" with him, her dress came up and Smith's pants fell down. Smith then drew a picture for the investigators to illustrate his penis penetrating C.B.'s vagina.

¶21. We recognize that for a confession to be admissible, it "must have been given voluntarily and not given because of promises, threats or inducements." *Manix v. State*, 895 So. 2d 167, 180 (¶39) (Miss. 2005). "If a confession is the result of threat, inducements or promises—however slight—it is not voluntary" and therefore not admissible. *Id*. at (¶40); *see also Agee*, 185 So. 2d at 674.

¶22. In *Layne v. State*, 542 So. 2d 237, 239 (Miss. 1989), the defendant argued that the trial court erred when it denied the defendant's motion to suppress his written statement to a police officer. The defendant asserted that he provided the statement as a result of the officer's promises of leniency—namely, the officer's statement that if the defendant "were to be cooperative with the investigation, the district attorney would be informed of this fact." *Id*. Although the supreme court found the officer's statement "troublesome," the court recognized that other jurisdictions, when addressing similar cases, have held that a statement like the one made to the defendant, "*when accompanied by no other coercive psychological tactics*[,] does not constitute an implied promise of leniency or advantage." *Id*. at 240. Utilizing this standard, the supreme court ultimately affirmed the trial court's ruling after finding that the statements made to the defendant by the police "were not accompanied by any further promise of benefit or advantage[,] . . . [and] there were no other indications that the interrogating officers employed any additional persuasive interviewing techniques." *Id*.

9

The supreme court further held that the determining factor in its decision to affirm the trial court's denial of the defendant's motion to suppress his statement "is the fact that [the defendant] offered no evidence—through his own testimony or otherwise—that the officers' 'promise' was the reason he confessed." *Id*.

¶23. In the more recent case of *Hamer v. State*, 318 So. 3d 1173, 1179 (¶19) (Miss. Ct. App. 2020), we addressed a defendant's claim that his confession was involuntary because it was induced by a federal agent's statements that the defendant was facing the death penalty and "was currently at the wrong end of the scale." This Court found that "[w]hile law enforcement did mention the death penalty, made questionable statements, and accompanied those statements with a 'best case-worse case scenario scale,' [the defendant] did not confess until after hearing all the 'evidence' the police had against him." *Id*. at (¶20). This Court explained that "[i]nvestigators misrepresenting evidence in their possession to a defendant" is a factor that should be viewed in the totality of the circumstances when reviewing the voluntariness of a confession. *Id*. This Court ultimately found that the trial court did not err in denying the defendant's motion to suppress his confession. *Id*. at 1180 (¶26).

¶24. In the case before us, the transcript reflects that when the investigators warned Smith that he could go to jail for the rest of his life, Smith continued to deny having any physical contact with C.B. Smith only admitted to having physical sexual contact with C.B. after Investigator Davis told Smith that if his DNA matched the samples from the rape kit, it would be too late for the investigators to help him. Even though Smith eventually admitted to some physical sexual contact with C.B., he denied any responsibility for the crime and

10

claimed that the contact was an accident. After reviewing the transcript from Smith's interrogation, we find that the investigators' statements regarding prison did not induce Smith to confess; rather, Smith's "incriminatory statement was in response to his belief as to the proof presented by the investigators[.]" *Hamer*, 318 So. 3d at 1180 (¶24). Additionally, the United States Court of Appeals for the Fifth Circuit has held that "discussions about potential prison sentences, without more, do not generally amount to coercion." *United States v. Anderson*, 755 F.3d 782, 791 (5th Cir. 2014).

¶25. As for the investigators' statements that they would "help" Smith and tell the trial judge that Smith cooperated with the investigation, this Court has held that although such statements are "discouraged," they are "not necessarily fatal to a suspect's otherwise voluntary statement." *Mullins v. State*, 757 So. 2d 1027, 1031 (¶11) (Miss. Ct. App. 2000). This Court has explained that proving that a confession was not freely and voluntarily given "requires more: suspects must demonstrate that the promise by law enforcement was the 'proximate cause' of the statement in issue." *Id.* Furthermore, we find that Smith "offered no evidence—through his own testimony or otherwise—that the officers' 'promise' was the reason he confessed." *See Layne*, 542 So. 2d at 240. As stated above, such a finding is "outcome determinative" when analyzing whether a confession was induced by promises of leniency. *Id.*

¶26. After our review, and after considering the totality of the circumstances, we find no manifest error in the trial court's finding that Smith's confession was knowing, intelligent, and voluntary. As a result, we find that the trial court did not abuse its discretion by

admitting Smith's statement into evidence.

## II. Trial in Absentia

¶27.    Smith next argues that the trial court erred in trying Smith in absentia. Smith asserts that because it was not abundantly clear prior to trial that Smith's absence was willful, the trial court should have granted Smith's counsel's requested continuance.

¶28.    We review both a trial court's decision to deny a motion for a continuance and a trial court's decision to try a defendant in absentia for an abuse of discretion. *Blount v. State*, 361 So. 3d 687, 690 (¶6) (Miss. Ct. App. 2022). Our supreme court has explained that "[w]hile "[b]oth our federal and state constitutions guarantee an accused's right to be present at every stage of his or her trial[,] . . . this right may be waived." *Id.* at (¶7) (quoting *Nevels v. State*, 325 So. 3d 627, 634 (¶23) (Miss. 2021)); *accord* U.S. Const. amend. VI; Miss. Const. art. III, § 26. Mississippi Rule of Criminal Procedure 10.1(b)(1)(B) provides that "a defendant may waive the right to be present at any proceeding . . . by the defendant's absence from any proceeding, if the court finds that such absence was voluntary and constitutes a knowing and intelligent waiver of the right to be present." *See also* Miss. Code Ann. § 99-17-9 (Rev. 2015) ("[A] defendant may waive the right to be present at trial" if he is "on recognizance or bail," has been notified of the charge(s) against him, and is "in any way in default for nonappearance.").

¶29.    Smith was not present for the hearing on his pretrial motions on September 26, 2022 or for his trial on September 27-28, 2022. At the hearing on the pretrial motions, Smith's counsel requested a continuance, arguing that Smith had a right to be present for the hearing.

Smith's counsel informed the trial court that she had sent numerous reminders to Smith's grandmother regarding the court date and trial, but Smith's grandmother had not responded or communicated with her in over a week. According to Smith's counsel, Smith's grandmother refused to allow counsel to communicate directly with Smith because "this case upsets him," so all communication with Smith had to go through his grandmother. Smith's counsel stated that despite this arrangement, Smith and his grandmother "have shown up every time I've requested them to."

¶30. The trial court denied the continuance after finding that Smith's absence was "voluntary and constituted a knowing and intelligent waiver of the right to be present." The trial judge recalled that Smith was present in the courtroom when the judge informed him of his court date. Based on the fact that Smith was aware of his court date as well as the testimony from Smith's counsel regarding her unsuccessful attempts to communicate with Smith via his grandmother, the trial court determined that Smith's absence "is definitely a voluntary absence on [Smith's] part, a voluntary ignoring of [counsel's] messages, a voluntary ignoring of the whole situation in the hopes that it will just go away, and that's not how life works." The trial judge also expressed his dismay that Smith's case had been pending for eight years with no trial.

¶31. During the course of the trial, Smith's counsel made two additional requests for a continuance, which the trial court denied. The record also reflects that a man named Ray Lenoir, who is not an attorney, appeared at the courthouse during the trial and filed motions

in Smith's behalf.[4]

¶32.    After the jury returned its guilty verdict, Smith's counsel filed a motion for judgment notwithstanding the verdict, to vacate the judgment, or for a new trial.  She also filed printouts of all the text messages she sent Smith's grandmother informing Smith of the trial date.

¶33.    Smith's sentencing hearing was held on October 4, 2022.  At the hearing, Smith informed the trial court and his trial counsel that he did not attend his trial because he was hospitalized.  That same day, Smith also filed a pro se motion for new trial and attached copies of his hospital discharge records.  The hospital records indicate that Smith was in a hospital in Tupelo, Mississippi, on the dates of September 27 and September 28, 2022.  The record shows Smith had been hospitalized at various times over the years while his case was pending, and the trial court always accommodated Smith.  However, Smith failed to inform the trial court or his trial counsel that he had been hospitalized during the trial until October 4, 2022.  The hospital records attached to Smith's motion do not indicate the reason for Smith's hospitalization, nor do they provide any explanation as to why Smith could not communicate with his trial counsel or the trial court regarding his hospitalization.

¶34.    At the subsequent hearing on Smith's motions for new trial, Smith reiterated that he was hospitalized and "on a ventilator" during his trial.  Smith claimed his counsel was aware

_____

[4] As reflected in the trial transcript, Smith informed the trial court at his sentencing hearing that he was unhappy with his trial counsel and that he had hired Lenoir as his attorney.  At the hearing on his post-trial motions, Smith clarified that he hired Lenoir "to consult" and find another attorney to represent Smith.  The record is clear that Lenoir is not an attorney, and when questioned by the trial court, Lenoir denied preparing any of the legal documents that he filed in Smith's behalf.

of his hospitalization and that she even called the hospital. Smith's counsel denied any knowledge as to Smith's location during the trial, informing the trial court that Smith's grandmother stopped communicating with her more than a week before trial. Smith's counsel also denied calling the hospital, explaining that no one told her that Smith was in the hospital. A printout of the text message conversations between Smith's counsel and Smith's grandmother confirm that counsel repeatedly tried to communicate with Smith's grandmother regarding trial matters and also sent reminders about the court date but with no response from Smith's grandmother for more than a week leading up to trial.

¶35. After our review, we find that the evidence supports the trial court's finding that Smith knowingly, intelligently, and voluntarily waived his right to be present by absenting himself at trial. Accordingly, the trial court did not abuse its discretion in commencing with the trial in absentia.[5] As for Smith's argument that it was not abundantly clear that Smith's absence was willful, our review of the record confirms that "substantial circumstantial

[5] In his appellate brief, Smith asks this Court to preserve the issue of his trial in absentia for consideration in a subsequent petition for post-conviction collateral relief. In so doing, Smith does not argue that the record before us is insufficient to address his claim that the trial court abused its discretion in trying him in absentia. Our supreme court has explained that "[t]he purpose of post-conviction proceedings is to bring forward facts to the trial court that were not known at the time of the judgment." *Carr v. State*, 873 So. 2d 991, 997 (¶3) (Miss. 2004). "The procedure is limited to those facts and matters which could not or should not have been brought at trial or on direct appeal." *Id.*; *see also* Miss. Code Ann. § 99-39-21(1) (Rev. 2020). Additionally, Mississippi Rule of Appellate Procedure 22(b) provides that "[i]ssues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record." The record before us contains sufficient evidence to fully address Smith's claim on direct appeal. Because we find that evidence regarding the trial court's decision to try Smith in absentia "was available, [Smith's counsel's] objection properly preserved the issue for appeal[,] and the proper time to bring this information before this Court was on direct appeal," we deny Smith's request. *Carr*, 873 So. 2d at 1002 (¶23).

evidence was before the trial court demonstrating [Smith's] intent to avoid trial." *Wales v. State*, 73 So. 3d 1113, 1120 (¶18) (Miss. 2011). In such cases, the supreme court has affirmed a trial court's decision to try a defendant in absentia despite "no direct evidence" showing that the defendant's absence was voluntary. *Wilson v. State*, 267 So. 3d 264, 271 (¶30) (Miss. 2019).

## CONCLUSION

¶36. Because we find that the trial court did not abuse its discretion by admitting into evidence Smith's statement to the investigators or by commencing with the trial in Smith's absence, we affirm.

¶37. **AFFIRMED.**

**GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.; BARNES, C.J., AND EMFINGER, J., JOIN IN PART.**

**McCARTY, J., DISSENTING:**

¶38. There is no doubt that the two deputies coerced a confession from the teenage defendant. They did it by threats and promises—banned by decades of precedent if they had an adult in handcuffs and made even more abhorrent because they had a child. As one of the officers said during the shakedown, "We don't care that you're still a juvenile." But this Court should care, and because we must never allow law enforcement to coerce a confession from a suspect, I must respectfully dissent.

¶39. Listen, there is plenty of proof this defendant attacked a six-year-old. It is horrific,

16

and he should be punished if a duly empaneled, properly instructed, and unanimous jury decides so upon competent proof. But this case could have easily been tried without including the halting and *clearly* coerced confessions of a 15-year-old child. We simply cannot ensure the integrity of our trial system when confessions are based in whole or in part on coerced testimony. And we risk being overruled by the Mississippi Supreme Court the same way we were just three years ago when we missed the mark in a very similar case.

¶40.    "Long before *Miranda* warnings were mandated by the U.S. Supreme Court, it was well settled in Mississippi jurisprudence that a confession given after promises of leniency was incompetent as evidence." *Dunn v. State*, 547 So. 2d 42, 44-45 (Miss. 1989). By that same token, "[i]f a confession is the result of threat, inducements or promises—*however slight*—it is not voluntary." *Manix v. State*, 895 So. 2d 167, 180 (¶40) (Miss. 2005) (emphasis added). "Further, if it is not voluntary, then the confession is inadmissible under the constitutional standards." *Id.*

¶41.    We failed to follow this clear and vital rule in a case we reviewed just a few years ago. Cynthia Burford was under investigation for a burglary, and during an investigation with law enforcement, they began to tell her that she would lose her kids if she went to prison and that she should be honest with them. *Burford v. State*, 320 So. 3d 502, 506-07 (¶5) (Miss. 2021). "We are the ones that can help you . . . get rid of those charges, get the lowest bond possible on those charges," the police said to her, "but what we need to make those things happen, to get you out of here and get you back to your kids, ok, and not stay in jail until you go to the grand jury or go to trial or whatever, ok, we need the truth." *Id.* "The best thing you can do

17

is be honest," Burford was told, and if she was, then the police would "get you a lower bond, help you out." *Id.* at (¶6).

¶42.    While we had affirmed the conviction, the Supreme Court cited to *Manix*, and determined that Burford's confession had been coerced. *Id.* at 511 (¶17).  It's one thing for law enforcement to push "for the suspect to 'tell the truth' or to 'come clean'"—these type of approaches "are allowed." *Id*. "But attempts by law enforcement officers to induce a confession by promising to obtain a bond or a lighter sentence for the accused are impermissible." *Id*. (emphasis added).  Conversely, "[t]hreatening the defendant with a greater penalty if she does not confess likewise can constitute an improper inducement." *Id*. at 512 (¶18).  While dodging the question of whether the confessions were per se inadmissible, the Court ultimately found Burford's lawyer had failed her by seeking to suppress the confessions since "there [was] a reasonable probability that the trial court, if presented with a timely opportunity to rule, would have found from the totality of the circumstances that Burford's written and recorded confessions had been induced by the threats and promises, rendering them involuntary and inadmissible," so it reversed and remanded for a new trial. *Id*. at 514, 516 (¶¶25-26).

¶43.    Law enforcement in this case did exactly what was done in *Burford*, if not worse, and the transcript of the interrogation reveals over a dozen instances of the same types of coercion banned by our precedent.[6]  Even more concerning, there are multiple times where

---

[6] The majority is correct that Smith was advised of his *Miranda* rights and signed the waivers.  "That assumes, however, that a boy of fifteen, without aid of counsel, would have a *full appreciation* of that advice and that on the facts of this record he had a freedom of choice." *Haley v. Ohio*, 332 U.S. 596, 601 (1948) (emphasis added).

18

it appears the boy does not possess a complete understanding of the questions the deputies asked him.

¶44. Perhaps the most troubling, though, is the following sequence by Investigator Davis:

> Your gonna put a yellow jump suit on they gonna cut your hair and them big them big [sic] guys in prison that's there for a long time they can't wait til you go to the shower.
>
> And in the back of your mind you gonna be thinking I should of talked to them investigators. I should have cooperated with them. Because we do get to talk to the judge and stuff. We do get to say hey you know what, he screwed up. He messed up. He talked to us, he helped us out on this. He knows he messed up. He's needing help. Let's help him.
>
> Or we can turn around and say he told us no. He told us he didn't do nothing, he ain't saying nothing. He ain't got nothing to give us.

Not only was this teenager threatened with what could happen to him if he went to prison (just as Burford was with the loss of her children), but the investigators all but *promised* him leniency (just as Burford was promised if she "helped" law enforcement).

¶45. This sequence is just a snippet of the coercion the child faced. There were at least **seventeen** other instances in which the investigators further planted the idea that the only way for Smith to obtain any "help" or reprieve was if he confessed. In their effort to coax Smith into confessing, Investigator Davis continued:

> Maybe you can draw better than you can speak. Ok. Here's a pen and a piece of paper. . . . But this is what I need you to do, ok, cause I can't draw and Investigator Lay can't draw. You take this pen right here and you just draw for us how far, if it was just a little bit, that's that we understand. Just draw a private picture you know of your privates and just tell us just how much maybe touched her with it. Or how how [sic] much maybe accidently went in her.

¶46. This statement was followed with Investigator Lay asking Smith, "Would you like to

19

write your mom and dad a letter to tell them just that you're sorry that all this happened and kind of what happened?"

¶47.   In accord with *Manix* and *Burford*, we must find the admission of this coerced confession was error and reverse and remand for a new trial.  If we fail to do it today, the Supreme Court will do it via certiorari review in a year, just as in *Burford*.

¶48.   And there is a reason this case is even worse.  Cynthia Burford was an adult.  But Christopher Smith was a teenage boy when he was interrogated by the two law enforcement officers.  Crucially, the Supreme Court of the United States has repeatedly "emphasized that admissions and confessions of juveniles require special caution." *In re of Gault*, 387 U.S. 1, 45 (1967).  In accord with that principle, that Court had previously held the voluntariness of a 14-year-old boy's confession could not be "compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions." *Gallegos v. Colorado*, 370 U.S. 49, 54 (1962).  For as we all know through common sense, "[a] 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police." *Gallegos*, 370 U.S. at 53-54.

¶49.   A child "is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protest his own interests or how to get the benefits of his constitutional rights." *Id.* at 54.  So the cure to such a defect was with "the aid of more mature judgment as to the steps he should take in the predicament in which he found himself," reasoning that "[a] lawyer or an adult relative or friend could have given the petitioner the protection which his own

20

immaturity could not." *Id.*

¶50. Just like the 14-year-old child in *Gallegos*, Christopher Smith was "unlikely to have any conception of what [would] confront him when he [was] made accessible only to the police." *Id.*

¶51. Again, the person making this "confession" wasn't an adult—he was a 15-year-old. That's already problematic, but a review of the entire record also reveals that Christopher Smith was enrolled in special education classes. Dr. Lott's evaluation of the defendant found that he "obtained a Word Reading standard score of 78," which "falls in the borderline range, . . . and at a 4.9 grade level." Further, Smith "obtained a Sentence Comprehension standard score of 72," which also "falls in the borderline range, . . . and at a 4.3 grade level." Given these circumstances, we just do not have any indicia of reliability that the confession was voluntary at all.[7]

¶52. Even 60 years ago the actions of law enforcement in this case would have been rejected by the court system—*must* have been rejected—if such a confession had been ripped out of an adult. The investigators' actions would still be unlawful if Christopher Smith were a 30-year-old parent or a 60-year-old school teacher. But it strains far beyond our precedent

___

[7] To compound the issues in this appeal, the record also reveals an incomplete effort by the State in seeking the admission of the confession. It is well-settled that "[t]he State has the burden of proving the voluntariness of a confession." *Moffett v. State*, 354 So. 3d 929, 942 (¶36) (Miss. Ct. App. 2022) (citing *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966)). The law is abundantly clear that the State "makes out a prima facie case" and satisfies its burden by providing "*testimony of an officer, or other person having knowledge of the facts*, that the confession was voluntarily made without any threats, coercion, or offer of reward." *Agee*, 185 So. 2d at 673 (emphasis added). That procedure was not fully followed in the trial court here.

and common decency to allow this coercion of a child—especially one isolated with not one but two investigators hounding him and without his parents or a lawyer. Certainly, "[a] lawyer or an adult relative or friend could have given [Christopher Smith] the protection which his own immaturity could not." *Gallegos*, 370 U.S. at 54.

¶53. The Mississippi Supreme Court has held, "If a confession is the result of threat, inducements or promises—however slight—it is not voluntary." *Manix*, 895 So. 2d at 180. And the Court reaffirmed this principle just three years ago in *Burford*, finding that a lawyer rendered ineffective assistance of counsel in not seeking to exclude such a confession as involuntary. 320 So. 3d at 516 (¶28). There was no need to coerce a confession from this defendant in order to seek justice for the victim and her family. And our state and federal constitutions forbid such coercion as a bedrock truth. Because the confession was coerced, it must be excluded, and we should reverse and remand for a new trial. Because we do not—in clear contravention to precedent from the Mississippi Supreme Court and United States Supreme Court—I respectfully must dissent.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION. BARNES, C.J., AND EMFINGER, J., JOIN THIS OPINION IN PART.**